**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:17-cr-00022-TWP-DML |
| | ) | |
| SHAWN L. MILLER (01), | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY ON DEFENDANT'S MOTION TO SUPPRESS

This matter is before the Court on Defendant Shawn L. Miller's ("Miller") Motion to Suppress. (Filing No. 23.) On February 14, 2017, Miller was indicted on Count One: violating 18 U.S.C. § 922(g)(1), possession of a firearm by a prohibited person, and Count Two: 21 U.S.C §841(a)(1), possession with the intent to distribute marijuana. (Filing No. 1.) Miller asserts that he was unreasonably seized in violation of his Fourth Amendment rights. Neither party requested an evidentiary hearing, nor is one warranted, as the Court has noted no significant disputed factual issues. "District courts are required to conduct evidentiary hearings only when a substantial claim is presented and there are disputed issues of material fact that will affect the outcome of the motion." *United States v. Curlin*, 638 F.3d 562, 564 (7th Cir. 2011). Pursuant to Federal Rule of Criminal Procedure 12(d), the Court now states its findings of fact and conclusions of law. For the reasons set forth below, the Court **denies** the Motion to Suppress.

## I. FINDINGS OF FACT

On Tuesday, November 30, 2016, at approximately 11:43 p.m., a representative from Protection 1 commercial alarm business, called the Indianapolis Metropolitan Police Department ("IMPD") after a burglary alarm was activated at Intercall Services ("Intercall"), a business that

Protection 1 monitors. (Filing No. 29, Govt. Exhibit 1.) At 11:44 p.m., the IMPD dispatch officer routed Daniel Reed ("Officer Reed") and Ian Peterson ("Officer Peterson") to Intercall, located at 2615 West Washington Street, Indianapolis, Indiana, to investigate. ([Filing No. 23-2](Filing No. 23-2).) When the officers arrived at the scene, Officer Peterson proceeded to check the front of the building while Officer Reed drove his fully marked patrol car to the rear of the building, located on an alley south of Washington Street. *Id.* The alley was modestly illuminated by street lights and, upon arriving, Officer Reed immediately observed Miller standing in the alley near the vicinity of Intercall's back door. ([Filing No. 27 at 2](Filing No. 27 at 2).) Officer Reed placed his spotlight on Miller and Miller immediately turned away. ([Filing No. 32 at 2](Filing No. 32 at 2).) Officer Reed activated his emergency lights and commanded Miller to stop. ([Filing No. 32 at 1](Filing No. 32 at 1).) Miller complied and put his hands up. ([Filing No. 23-2 at 1](Filing No. 23-2 at 1).) Officer Reed then asked Miller what he was doing behind the building and Miller explained he was "walking home from his girl's house." *Id.* Officer Reed asked Miller for identification and Miller initially denied having his wallet. *Id.* Miller patted his pockets, and then changed his answer and stated that he did have his wallet and retrieved it from his left rear pocket. *Id.* At that time, Officer Reed noticed a large bulge in Miller's front left pants pocket and a second bulge near Miller's waist line. *Id.*

      Thereafter, Miller handed Officer Reed his wallet, and when Officer Reed took the wallet, Miller took flight. *Id.* Officer Reed commanded Miller to stop and informed Officer Peterson that Miller had taken flight. *Id.* Officer Peterson observed Miller running and managed to grab Miller's jacket. *Id.* Miller attempted to wiggle out of Officer Peterson's grasp but was unsuccessful. *Id.* Once Officer Reed caught up to Miller, both officers tackled Miller and placed him in handcuffs. *Id.* As he was being placed in handcuffs, Miller voluntarily informed the officers that he possessed a gun in his pocket. *Id.* Officer Reed asked Miller if he had anything else on him that he needed

to know about and Miller responded, "a little weed." ([Filing No. 23-2 at 2](#).) While searching Miller incident to the arrest, Officer Reed found a black sock, containing a baby bottle with sixteen plastic bags of "green leafy substance" stuffed inside Miller's waistband and $303.00 was located in his front right pants pocket. ([Filing No. 27 at 6](#).) After reading Miller his *Miranda* rights, Officer Reed asked Miller what was in the bottle and Miller responded that it was marijuana. ([Filing No. 27 at 5](#); [Filing No. 23-2 at 2](#).)

Miller was arrested and charged with one count of Prohibited Person in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1), and one count of Possession with the Intent to Distribute Marijuana in violation of 21 U.S.C §841(a)(1). ([Filing No. 1](#).)

## II. CONCLUSIONS OF LAW

Miller moves to suppress all evidence obtained from his seizure, specifically the firearm and marijuana. Miller asserts this evidence should be suppressed because the initial stop, detention, and interrogation were conducted without reasonable suspicion and violated Miller's Fourth Amendment rights. The issues before the Court are whether the initial stop amounted to a seizure and, if so, whether the seizure was supported by reasonable suspicion.

### A. The initial stop amounted to a seizure.

Miller argues that the initial encounter with Officer Reed in the alley amounted to a seizure because he was not free to leave. "It is well established that a seizure does not occur merely because a police officer approaches an individual and asks him or her questions." *United States v. Smith*, 794 F.3d 681, 684 (7th Cir. 2015) (citations omitted). Only when a police officer, "by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a seizure has occurred." *Terry v. Ohio*, 392 U.S. 1, 20 n.16 (1968). "The crucial test for determining if there has been a seizure is 'whether taking into account all of the

circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Smith*, 794 F.3d at 684 (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991)). The Court considers several factors when determining whether a person was seized, including: "the threatening presence of several officers, the display of a weapon by an officer…physical[ly] touching … the citizen, [and] the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (citations omitted).

The Court concludes that the initial stop amounted to a seizure because a reasonable person under similar circumstances would not believe he was free to leave. Officer Reed shined his spotlight on Miller and when Miller turned away from the squad car, Officer Reed commanded Miller to stop. Officer Reed's conduct and command clearly communicated to Miller that he did not have an option of ignoring the officer's presence and he was not free to leave. The location in the darkened alley also weighs in favor of seizure. *See Smith*, 794 F.3d at 685 (holding a "[a] citizen approached in an alley will very often be alone...and have limited room in which to maneuver, conditions that may contribute to the reasonable belief that simply walking away from the police is not an option"). Accordingly, the Court finds that the initial stop amounted to a seizure.

**B.**     **<u>The seizure was supported by reasonable suspicion.</u>**

Miller next argues that the Court should suppress the firearm and marijuana because the initial seizure by Officer Reed was unreasonable under the Fourth Amendment. A police officer may conduct an investigatory stop if that officer has a reasonable suspicion supported by articulable facts that criminal activity is afoot. *See United States v. Broomfield*, 417 F.3d 654, 655

(7th Cir. 2005) (citing *Terry*, 392 U.S. 1); *see also United States v. Bullock*, 632 F.3d 1004, 1014–15 (7th Cir.2011) (citations omitted). Reasonable suspicion is more than a hunch but less than probable cause, and it requires "some minimal level of objective justification" for making a stop. *United States v. Sokolow*, 490 U.S. 1, 7, (1989). When determining whether reasonable suspicion exists, courts must assess the "totality of the circumstances to evaluate whether the officer has a particularized and objective basis for suspecting illegal activity." *United States v. Zambrana*, 428 F.3d 670, 675 (7th Cir. 2005) (quotation marks omitted). This assessment is based on "the totality of the circumstances known to the officer at the time of the stop, including the experience of the officer and the behavior and characteristics of the suspect." *United States v. Lawshea*, 461 F.3d 857, 859 (7th Cir. 2006). The government bears the burden of establishing reasonable suspicion by a preponderance of the evidence. *United States v. Uribe*, 709 F.3d 646, 650 (7th Cir. 2013).

The Court finds that the totality of the circumstances in this case meet the standard of reasonable suspicion required by *Terry*. *See Terry*, 392 U.S. 1. The officers are able to point to specific and articulable facts that warrant an investigatory stop. Officers Reed and Peterson responded to a burglary alarm at Intercall. When Officer Reed arrived at the scene shortly before midnight, a time when the business was closed, Miller was the only person present and standing in the alley near the vicinity of Intercall's back door. Based on Miller's proximity to the location of the tripped burglary alarm and the lack of other civilians in the commercial area at the time, the Court concludes that Officer Reed reasonably believed Miller was engaged in illegal activity to justify a brief detention and the initial questioning. Within less than two (2) minutes of the stop, the officer observed Miller patting his pockets, changing his statement about whether he had identification with him, and Officer Reed observed a bulge in Miller's front pants pocket and a

second large bulge in the area of Miller's waistline; all preceding Miller's flight on foot. Because reasonable suspicion existed for the initial stop, Miller's Motion to Suppress is **denied**.

### III. CONCLUSION

For the reasons stated above, Defendant Shawn L. Miller's Motion to Suppress ([Filing No. 23](#)) is **DENIED**.

**SO ORDERED.**

Date: 5/25/2017

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Finis Tatum, IV
ftatum@glaserebbs.com

Michael J. Donahoe
INDIANA FEDERAL COMMUNITY DEFENDERS
mike.donahoe@fd.org

Cynthia J. Ridgeway
UNITED STATES ATTORNEY'S OFFICE
cynthia.ridgeway@usdoj.gov